# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CIVICA SIMPSON,**

        **Plaintiff,**

v.                                                                 **Case No: 6:25-cv-1129-PGB-DCI**

**ORLANDO HEALTH SOUTH
LAKE HOSPITAL, STEVEN S.
BOCAS and DOES I – D [1–500],**

        **Defendants.**
_____/

## ORDER

This cause comes before the Court on Plaintiff Civica Simpson's ("**Plaintiff**") Verified Emergency Motion for Temporary Restraining Order. (Doc. 3 (the "**Motion**")). The Court does not deem a response to the Motion from Defendants Orlando Health South Lake Hospital ("**Defendant Hospital**"), Steven S. Bocas ("**Defendant Bocas**"), and Does I–D [1–500] (collectively, the "**Defendants**") to be necessary.[1] Upon consideration, Plaintiff's Motion is due to be denied.

---

[1] "A trial court has managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981). In any event, the Court notes that Plaintiff's Verified Complaint was filed just yesterday, and thus, Defendants have not yet appeared in this action. (Doc. 1).

I.  **BACKGROUND**

Plaintiff, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1 (the "**Complaint**")). In the Complaint, Plaintiff alleges that she has been the long-term custodial caregiver for a thirty-eight-year-old individual (the "**patient**") for the past sixteen years. (*Id.* at pp. 3–4). The patient was admitted to the Defendant Hospital for gastrointestinal distress on June 19, 2025. (*Id.* at p. 4). While in the Defendant Hospital's care, the patient suffered a stroke and two cardiac arrests, resulting in an anoxic brain injury. (*Id.*). The patient is currently admitted to the Defendant Hospital's intensive care unit and is unconscious and ventilator-dependent. (*Id.*).

Plaintiff asserts that, yesterday, Defendant Hospital's staff informed Plaintiff that the patient's biological father, Defendant Bocas, directed Defendant Hospital to remove the patient from life support. (*Id.*). Defendant Hospital, through myriad of its staff members, has stated that it intends to effectuate this request and to "withdraw [the patient's] life support imminently." (*Id.* at p. 5).

Plaintiff avers that there has been "[n]o legal proceeding or adjudication of guardianship . . . and no judicial order" authorizing Defendant Bocas' directive. (*Id.* at pp. 4–5). Further, "no valid health care surrogate designation, durable power of attorney, advance directive, or state court guardianship naming Defendant Steven Bocas (or any third party) exists in the hospital's possession or in any public record known to Plaintiff." (*Id.* at p. 5). As a result, Plaintiff contends that the removal of the patient's life support would constitute a violation of due

2

process under the Fourteenth Amendment to the United States Constitution as well as Article I, § 9 of the Florida Constitution. Plaintiff thus attempts to state a federal cause of action for the alleged violations under § 1983. Of note, by all appearances, the Defendants in this action include a private individual and a private hospital along with its staff member(s). (*See* Docs. 1, 3).

In the Motion, Plaintiff asks the Court to enter a temporary restraining order providing myriad forms of relief, including an injunction preventing Defendants from "modifying, withdrawing, or terminating" any aspect of the patient's life support. (Doc. 3, pp. 3–4).

## II.   LEGAL STANDARD

To obtain a temporary restraining order, a plaintiff must show (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of a restraining order; (3) that the harm suffered by Plaintiff in the absence of a restraining order would exceed the harm suffered by Defendants if the restraining order issued; and (4) that a restraining order would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States*, 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008).

Further, temporary restraining orders are "extraordinary and drastic remed[ies] not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306

(11th Cir. 1998)). Ultimately, issuing a temporary restraining order should be "the exception rather than the rule." *Id.*

### III. DISCUSSION

Here, Plaintiff has failed to clearly establish the first requirement for proving entitlement to a temporary restraining order—namely, that Plaintiff has "a substantial likelihood of success on the merits of the underlying case." *Johnson & Johnson*, 299 F.3d at 1246–47. Specifically, Plaintiff has failed to demonstrate that she can meet the "color of law" element of her § 1983 action.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citations omitted). Importantly, "[l]ike the state action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

In *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993), the Eleventh Circuit considered whether the conduct of a private hospital amounted to state action under § 1983. In so doing, the Eleventh Circuit noted that it had previously set forth the three tests utilized by the United States Supreme Court to determine whether state action exists under such circumstances. *Id.*

(citing *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988) [*hereinafter NBC*]). The Eleventh Circuit explained that:

> The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." *NBC*, 860 F.2d at 1026 (citations omitted). The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." [*Id.*] (citations omitted). The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." [*Id.*] at 1026–27 (citations omitted).

*Id.*

Simply put, Plaintiff has failed to allege, let alone clearly demonstrate, that Defendants' conduct meets any of the three aforementioned tests. (*See* Docs. 1, 3). Instead, Plaintiff merely asserts that Defendants' conduct "constitutes action under color of state law, in that the hospital and its agents operate under state licensure, regulation, and oversight, and the procedures and policies of its ethics committee derive authority from state-sanctioned practices." (Doc. 1, p. 6). Importantly, however, "[a] private hospital is not transformed into a state actor merely by statutory regulation." *Lindbloom v. Manatee Mem'l Found., Inc.*, No. 8:22-cv-2428-MSS-JSS, 2023 WL 11891890, at *3 (M.D. Fla. Apr. 13, 2023) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999)).[2] Further,

---

[2] Additionally, while Plaintiff cites to *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005) in support of the Court's power to intervene here, *Schiavo* is unavailing to Plaintiff. (Doc. 3, p. 7). Notably, *Schiavo* was in federal court pursuant to a statute passed specifically to allow the district court to rule on whether to stop plaintiff Schiavo's life support. 403 F.3d at 1292 (citing Pub. L. No. 109–3). No such law provides similar power to the Court here.

there is no apparent basis to support that Defendant Bocas has engaged in state action. (Docs. 1, 3).

The Court acknowledges the gravity of the situation that brings Plaintiff to this Court. Ultimately, however, the Court cannot find that Plaintiff has clearly established a likelihood of succeeding on the merits of Plaintiff's § 1983 claim. *See Siegel,* 234 F.3d at 1176; *Johnson & Johnson*, 299 F.3d at 1246–47. Consequently, the Court need not address the remainder of Plaintiff's Motion. *See Schiavo*, 403 F.3d at 1232 ("The first of the four prerequisites to [] injunctive relief is generally the most important." (citation omitted)).

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Verified Emergency Motion for Temporary Restraining Order (Doc. 3) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on June 25, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

Further, the *Schiavo* court ultimately affirmed the district court's denial of the temporary restraining order at issue in that case. *Id.* at 1296.